UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICK BURNS,

                Plaintiff,

v.                                             9:02-CV-0165
                                             (TJM/GHL)

COUNTY OF RENSSELAER, JOHN MAY,
BOB DOE, and JOHN DOE,

                Defendants.

_____

APPEARANCES:                       OF COUNSEL:

PATRICK BURNS, 05-A-1818
    Plaintiff, *Pro Se*
Groveland Correctional Facility
700 Sonyea Road
Sonyea, New York 14556

AINSWORTH, SULLIVAN, TRACY, KNAUF,        MARIA C. TEBANO, ESQ.
    WARNER and RUSLANDER, P.C.
    Attorneys for Defendants
320 Great Oaks Boulevard
Albany, New York 12203

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation, pursuant to 28

U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c), by the Honorable Thomas J. McAvoy, United

States District Judge.  Patrick Burns ("Plaintiff") commenced this *pro se* civil rights action under

42 U.S.C. § 1983, asserting violations of his rights under the Eighth and Fourteenth

Amendments.  (Dkt. No. 1, Part 2 [Plf.'s Compl.].)  Currently before the Court is Defendants'

motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 30.)  For the reasons

discussed below, I recommend that Defendants' motion be granted.

## Table of Contents

I.      BACKGROUND.................................................................................................3
II.     SUMMARY JUDGMENT STANDARD.................................................................5
III.    STATEMENT OF MATERIAL FACTS................................................................7
IV.     ANALYSIS....................................................................................................14

      A.      Whether Plaintiff Has Failed to Establish a Due Process Claim Under the Fourteenth Amendment............................................................................................14

      B.      Whether Plaintiff Has Failed to Establish a Conditions-of-Confinement Claim Under the Eighth Amendment......................................................................................19

      C.      Whether Plaintiff Has Failed to Establish a Denial-of-Medical-Care Claim Under the Eighth Amendment......................................................................................21

      D.      Whether, in the Alternative, Plaintiff Has Failed to Establish the Existence of a Municipal "Policy or Custom"  Sufficient to Hold the Defendant County of Rensselaer Liable...................................................................................24

      E.      Whether, in the Alternative, the Individual Defendants Are Protected from Liability by the Doctrine of Qualified Immunity.......................................................26

      F.      Whether, in the Alternative, Plaintiff's Claims Against the "Doe" Defendants Should Be Dismissed.........................................................................................28

      G.      Whether Plaintiff Has Established a Pendent State Law Claim of Negligence..........30

## I.     BACKGROUND

Liberally construed, Plaintiff's Complaint alleges that, while Plaintiff was incarcerated at Rensselaer County Correctional Facility ("Rensselaer County C.F."):

(1) Defendants violated Plaintiff's **due process** rights under the **Fourteenth Amendment** by intentionally or recklessly transferring Plaintiff, on or after **June 21, 2000**, from a "non-violent offender" housing unit to a "violent adult" housing unit (a/k/a the "West 2 Unit"), despite his classification as "non-violent offender," as a form of punishment for an offense (i.e., stealing food and giving food to other inmates) for which he was never convicted or even charged (or by having a policy or custom that permitted such transfers);

(2) Defendants violated Plaintiff's rights to be free from "cruel and unusual" **conditions of confinement** under the **Eighth Amendment** by housing Plaintiff in the "violent adult" unit with inmate James Spears, whom Defendants knew or should have known had been classified as a "violent inmate" (due to his long history of violent criminal offenses and his need to take prescription medication to control his violent tendencies), and thus causing Plaintiff to be assaulted by Spears on **February 10, 2001**, and thereby sustain (among other injuries) a broken nose, which required surgery (or by having a policy or custom that permitted such housing);

(3) Defendants violated Plaintiff's rights to **adequate medical care** under the **Eighth Amendment** by being deliberately indifferent to Plaintiff's serious medical needs (resulting from the aforementioned assault) through:

3

**(a)** Defendant Bob Doe's refusal or failure to provide Plaintiff with his prescribed antibiotic and/or painkiller medication;

**(b)** Defendant Bob Doe's refusal or failure to make Plaintiff available for his prescribed follow-up medical care;

**(c)** Defendants' transfer of Plaintiff to the custody of the New York State Department of Correctional Services ("DOCS") on the date Plaintiff was scheduled to receive his follow-up medical care; and

**(d)** Defendants' refusal or failure to transfer Plaintiff's medical records to DOCS, thus impeding Plaintiff's medical care contributing to Plaintiff's injuries and pain and suffering

(or by having a policy or custom that permitted such deprivations); and

**(4)** Defendants are liable under New York State's common law of **negligence**, by carelessly transferring Plaintiff, who was classified as a "non-violent offender," from a "non-violent offender" housing unit to a "violent adult" housing unit, where he was housed with, and injured by, James Spears, who was a known "violent inmate" (or by having a policy or custom that permitted such a transfer).

(Dkt. No. 1, Part 2 [Plf.'s Compl.].)[1]

Defendants' motion for summary judgment, which Plaintiff opposed (or attempted to oppose, *compare* Dkt. Nos. 35 *with* Dkt. No. 37), raises the following seven issues: (1) whether

---

[1]     To the extent Plaintiff's Complaint alleges any claims under the Fifth Amendment, I note that those claims were dismissed by Order of the Court filed on March 19, 2003.  (Dkt. No. 6.)

Plaintiff has failed to establish a due process claim under the Fourteenth Amendment; (2) whether Plaintiff has failed to establish a claim for confinement under "cruel and unusual" prison conditions under the Eighth Amendment; (3) whether Plaintiff has failed to establish a denial-of-medical-care claim under the Eighth Amendment; (4) whether, in the alternative, Plaintiff has failed to establish the existence of a municipal "policy or custom" sufficient to hold Defendant County of Rensselaer liable; (5) whether, in the alternative, the individual Defendants are protected from liability by the doctrine of qualified immunity; (6) whether, in the alternative, Plaintiff's claims against the "Doe" Defendants should be dismissed; and (7) whether Plaintiff has failed to establish a pendent state law claim for negligence  (Dkt. No. 30, Part 26 [Defs.' Mem. of Law].)

For the reasons discussed below, I answer each of these questions in the affirmative.

## II.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citation omitted); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

---

[2]        A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court must view a *pro se* plaintiff's pleadings.  "[I]n actions in which one of the parties appears *pro se,* this Court is faced with the . . . responsibility of granting significant liberality in how *pro se* pleadings are construed."  *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y. 1998); *see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* pleadings held "to less stringent standards than formal pleadings drafted by lawyers."); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir. 1989).  For example, where a plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, the Court must construe the plaintiff's complaint and opposition papers liberally so as to raise the strongest arguments that they suggest. *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y.

6

1997) (motion for summary judgment in civil rights case).

However, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).  In other words,  "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment." *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) (citations omitted), *accord, Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) (citations omitted).

## III.   STATEMENT OF MATERIAL FACTS

The facts set forth in a defendant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[3] and are not specifically controverted by the plaintiff.[4]

To "specifically controvert[]" each of the statements of material fact in a defendant's Rule 7.1(a)(3) Statement of Material Facts, a plaintiff must file a *response* to the Statement of Material Facts that "mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" *and* that "set[s] forth

---

[3]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citations omitted).

[4]     *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

a specific citation to the record where the factual issue arises."[5]

Portions of the record sufficient to create a "factual issue" include affidavits or a verified complaint.[6]  However, such an affidavit or verified complaint must, among other things, be based "on personal knowledge."[7]  An affidavit or verified complaint is not based on personal knowledge if, for example, it is based on mere suspicion, rumor, hearsay, or secondhand

---

[5]    Local Rule 7.1(a)(3); *see*, *e.g.*, *Jones v. Smithkline Beecham Corp.*, 309 F. Supp.2d 343, 346 (N.D.N.Y. 2004) (McAvoy, J.) ("[W]here Plaintiff has failed to provide specific references to the record in support of her denials or has otherwise failed to completely deny Defendant's assertions of fact, those assertions will be taken as true."); *Lee v. Alfonso*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *15 (N.D.N.Y. Feb. 10, 2004) (Scullin, C.J.) ("Plaintiff does not offer any facts to support his claims that would raise an issue of fact.  Nor has he overcome his failure to respond to Defendants' Rule 7.1(a)(3) Statement.  Therefore, Defendants' version of the facts remains uncontroverted."); *Margan v. Niles*, 250 F. Supp.2d 63, 67 (N.D.N.Y. 2003) (Hurd, J.) ("Plaintiff's Rule 7.1(a)(3) statement, which contains numerous denials, does not contain a single citations to the record.  Because plaintiff's response Rule 7.1(a)(3) statement does not comply with the local rules, it has not been considered."); *Mehlenbacher v. Slafrad*, 99-CV-2127, 2003 U.S. Dist. LEXIS 9248, at *4 (N.D.N.Y. June 4, 2003) (Sharpe, M.J.) ("Since [the plaintiff] has failed to respond to the defendant's statements of material fact, the facts as set forth in the defendants' Rule 7.1 Statement . . . are accepted as true."); *Adams v. N.Y. State Thruway Auth.*, 97-CV-1909, 2001 U.S. Dist. LEXIS 3206, at *2, n.1 (N.D.N.Y. March 22, 2001) (Mordue, J.) ("[T]o the extent plaintiff's responses violate Local Rule 7.1, and are not properly admitted or denied, the Court will deem defendant's statement of fact admitted by plaintiff.").

[6]    *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted); Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

[7]    Fed. R. Civ. P. 56(e) (requiring "personal knowledge"); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) (citations omitted), *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

information.[8]  Similarly, such an affidavit or verified complaint must not be general and

conclusory.[9]  In the instant case, I note that, although Plaintiff labels his Complaint as "Verified,"

it is not in fact verified because it is neither notarized nor subscribed pursuant to 28 U.S.C. §

1746.  (Dkt. No. 1, Part 2 [Plf.'s Compl.].)

Accordingly, the following material facts, even when viewed most favorably to Plaintiff,

are supported by evidence in the record, and are not specifically controverted by Plaintiff:

### Circumstances Surrounding Plaintiff's Transfer to the "West 2" Housing Unit and His Altercation with Inmate James Spears

1.      Between June 21, 2000, and February 27, 2001, Plaintiff was an inmate at the

Rensselaer County C.F.[10]

2.      In accordance with New York State Correctional Law, the Rensselaer County C.F.

classified (and classifies) inmates housed within the facility under four categories:

---

[8]      *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[9]      *See Patterson v. County of Oneida*, 375 F.2d 206, 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") (citations omitted); *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting "conclusory" statements in opposing affidavit); *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); Fed. R. Civ. P. 56(e) (requiring more than "mere allegations or denials of . . . [a pleading] . . . but . . . specific facts showing that there is a genuine issue for trial").

[10]      (Dkt. No. 30, Part 8, at 30 [Pre-Trial Examination of Plf.];Dkt. No. 30, Part 9, ¶ 15 [Loveridge Aff.]; Dkt. No. 30, Part 25 [Ex. P to Loveridge Aff.].)

      a.        Male adults, ages 19 and over;

      b.        Male minors, ages 16 to 18 inclusive;

      c.        Female adults, ages 19 and over; and

      d.        Female minors, ages 16 to 18 inclusive.[11]

3.      On February 10, 2001, Plaintiff and Inmate James Spears were housed in the West 2 Unit of the Rensselaer County C.F. with 35 other male inmates over the age of 19.[12]

4.      The West 2 Unit was not (and is not) a "violent adult unit" and did not (and does not) house "only violent adult males."[13]

5.      Plaintiff was incarcerated for burglary (third degree), criminal misconduct (third degree), possession of burglary tools, petit larceny, and resisting arrest.[14]  He was sentenced to incarceration for a period of one to three years.[15]

6.      Inmate Spears was incarcerated for attempted robbery and petit larceny.[16]  He was

---

[11]      (Dkt. No. 30, Part 9, ¶ 3 [Loveridge Aff.]; Dkt. No. 30, Part 10 [Ex. A to Loveridge Aff.].)

[12]      (Dkt. No. 30, Part 9, ¶ 6 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

[13]      (Dkt. No. 30, Part 9, ¶ 5 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

[14]      (Dkt. No. 30, Part 9, ¶ 6 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

[15]      (Dkt. No. 30, Part 9, ¶ 6 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

[16]      (Dkt. No. 30, Part 9, ¶ 6 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

sentenced to incarceration for 133 days.[17]

7.     Before February 10, 2001, Inmate Spears had not been involved in any assault while incarcerated and had not previously been charged with any crimes or rule violations in jail.[18]  Therefore, Defendants were not aware of any "violent tendencies" inmate Spears may have possessed.[19]

8.     Similarly, before February 10, 2001, Plaintiff was not aware of Inmate Spears having been involved in any physical altercations with any inmates at the Rensselaer County C.F.[20]  As such, Plaintiff had not advised or indicated to anyone employed at the Rensselaer County C.F. that he was afraid of Inmate Spears.[21]

9.     On February 10, 2001, Plaintiff got into a physical altercation with Spears during, or following, a game of cards.[22]  As a result, Plaintiff suffered a nasal fracture, superficial head injury, and a facial contusion.[23]

---

[17]     (Dkt. No. 30, Part 9, ¶ 6 [Loveridge Aff.]; Dkt. No. 30, Part 11 [Ex. B to Loveridge Aff.].)

[18]     (Dkt. No. 30, Part 13 [Ex. D to Loveridge Aff.].)

[19]     (Dkt. No. 30, Part 9, ¶ 7 [Loveridge Aff.]; Dkt. No. 30, Part 12 [Ex. C to Loveridge Aff.]; Dkt. No. 30, Part 13 [Ex. D to Loveridge Aff.]; *see also* Dkt. No. 35, ¶ 8 [Plf.'s Rule 7.1 Response, failing to cite any evidence in support of his denial of this fact].)

[20]     (Dkt. No. 30, Part 8, at 55 [Ex. F to Tebano Aff.].)

[21]     (Dkt. No. 30, Part 8, at 50 [Ex. F to Tebano Aff.].)

[22]     (Dkt. No. 30, Part 8, at 49-50 [Ex. F to Tebano Aff.]; Dkt. No. 30, Part 15 at 2 [Ex. F to Loveridge Aff.].)

[23]     (Dkt. No. 30, Part 19 [Ex. J to Loveridge Aff.].)

10.     After the altercation of February 10, 2001, neither Plaintiff nor Inmate Spears

pressed charges against the other.[24]  However, Plaintiff pled guilty to the violations of assault and

disorderly conduct.[25]

### Plaintiff's Medical Treatment Following the Altercation

11.     On February 10, 2001, immediately following the altercation, the Rensselaer

County C.F. Nurse saw Plaintiff because his nose was bleeding profusely and appeared to be

broken.[26]  The Nurse applied pressure to Plaintiff's nose with gauze until the bleeding subsided.[27]

Plaintiff was then transported to Samaritan Hospital where he was examined by Kathleen

Crisafulli M.D.[28]  Crisafulli treated Plaintiff for a nasal fracture, superficial head injury, and a

facial contusion.[29]  Crisafulli prescribed certain medications for Plaintiff (including the

decongestant Benadryl and the pain reliever Tylenol) for a period of two days and advised him to

schedule a follow-up appointment with Dr. Kopp.[30]  That same day, the Rensselaer County C.F.

provided Plaintiff with his medications, giving Plaintiff Benadryl and apparently substituting the

---

[24]     (Dkt. No. 30, Part 16 [Ex. G to Loveridge Aff.]; Dkt. No. 30, Part17 [Ex. H to
Loveridge Aff.].)

[25]     (Dkt. No. 30, Part 18 [Ex. I to Loveridge Aff.].)

[26]     (Dkt. No. 30, Part 20 [Ex. K to Loveridge Aff.].)

[27]     (Dkt. No. 30, Part 20 [Ex. K to Loveridge Aff.].)

[28]     (Dkt. No. 30, Part 19 [Ex. J to Loveridge Aff.].)

[29]     (Dkt. No. 30, Part 19 [Ex. J to Loveridge Aff.].)

[30]     (Dkt. No. 30, Part 19 [Ex. J to Loveridge Aff.].)

pain reliever Apap for the prescribed pain reliever Tylenol.[31]

    12.    On February 15, 2001, Plaintiff was transported from the Rensselaer County C.F. to his scheduled follow-up appointment with Dr. Kopp.[32]  Dr. Kopp suggested that Plaintiff have a closed nasal reduction.[33]

    13.    On February 20, 2001, Plaintiff was again transferred to Samaritan Hospital where he underwent a closed nasal reduction.[34]  Thereafter, he was again prescribed certain

---

[31]    (Dkt. No. 30, Part 9, ¶ 13 [Loveridge Aff.]; Dkt. No. 30, Part 19 at 2, 5 [Ex. J to Loveridge Aff.]; Dkt. No. 30, Part 20 [Ex. K to Loveridge Aff.]; Dkt. No. 30, Part 21 [Ex. L to Loveridge Aff.]; Dkt. No. 30, Part 22 [Ex. M to Loveridge Aff.]; Dkt. No. 35 [Exs. B-D to Plf.'s Rule 7.1. Response].)  In his "Verified" Complaint, Plaintiff alleges that Defendant "Bob" Doe (the head nurse at Rensselaer County C.F.) "intentionally, knowingly, recklessly and negligently" failed and refused to provide Plaintiff with his prescribed medication (which allegedly included "antibiotics and painkillers").  (Dkt. No. 1, Part 2, ¶ 32 [Plf.'s Compl.].)  However, because Plaintiff's Complaint is neither notarized nor subscribed pursuant to 28 U.S.C. § 1746, this allegation does not constitute evidence.  Even if this allegation were sworn, it would likely be conclusory due to its lack of detail.  For example, Plaintiff fails to allege (1) the specific names of the "antibiotics and painkillers" he was allegedly denied, (2) what medications, if any, other than "antibiotics and painkillers" he was allegedly denied, and (3) precisely when or under what circumstances Defendant "Bob" Doe allegedly denied him the "antibiotics and painkillers." (Dkt. No. 1, Part 2, ¶¶ 29, 31, 32 [Plf.'s Compl.].)  Nor does Plaintiff create an issue of fact through his Rule 7.1 Opposition, in which he (1) fails to *completely* deny Defendants' assertion that (on or about February 10, 2001) "Plaintiff was provided his prescribed medications by the Rensselaer County Correctional Facility" (i.e., Plaintiff does not deny that Defendants provided him with medications other than pain killers), and (2) fails to cite *any* evidence in support of his alleged partial denial of medications on February 10, 2001.  (Dkt. No. 35, ¶ 18 [Plf.'s Rule 7.1 Response].)

[32]    (Dkt. No. 30, Part 22 [Ex. M to Loveridge Aff.].)

[33]    (Dkt. No. 30, Part 22 [Ex. M to Loveridge Aff.].)

[34]    (Dkt. No. 30, Part 9, ¶ 14 [Loveridge Aff.]; Dkt. No. 30, Part 23 [Ex. N to Loveridge Aff.]; Dkt. No. 30, Part 24 [Ex. O to Loveridge Aff.].)

medications, including an antibiotic and a pain medication.[35]  Rensselaer County C.F. provided

Plaintiff with his medications, giving Plaintiff his prescribed antibiotic (Ceftin), and apparently

substituting a large dose (i.e., 800 milligrams) of ibuprofen for Plaintiff's prescribed pain

medication (apparently Lortab).[36]

14.     On February 27, 2001, Plaintiff was transferred to a New York State Department

of Corrections Facility.[37]  Plaintiff's transfer papers, including his health transfer information,

were forwarded to that facility.[38]

## IV.     ANALYSIS

### A.     Whether Plaintiff Has Established a Due Process Claim Under the Fourteenth Amendment

In their memorandum of law, Defendants argue that Plaintiff has failed to establish a due

process claim under the Fourteenth Amendment because (1) he has failed to establish a

"protected liberty interest" (e.g., in not being transferred to violent-offender housing, in being

provided with certain proscribed medication, in being made available for certain follow-up care,

---

[35]     (Dkt. No. 30, Part 9, ¶ 14 [Loveridge Aff.]; Dkt. No. 30, Part 21 [Ex. L to Loveridge Aff.]; Dkt. No. 30, Part 24 [Ex. O to Loveridge Aff.]; Dkt. No. 35 [Exs. B-D to Plf.'s Rule 7.1 Response].)

[36]     (Dkt. No. 30, Part 9, ¶ 14 [Loveridge Aff.]; Dkt. No. 30, Part 21 [Ex. L to Loveridge Aff.]; Dkt. No. 30, Part 24 [Ex. O to Loveridge Aff.]; Dkt. No. 30, Part 8 at 78, 82 [Plf.'s Deposition Transcript]; Dkt. No. 35 [Exs. B-D to Plf.'s Rule 7.1. Response].)

[37]     (Dkt. No. 30, Part 9, ¶ 15 [Loveridge Aff.]; Dkt. No. 30, Part 25 [Ex. P to Loveridge Aff.].)

[38]     (Dkt. No. 30, Part 9, ¶ 15 [Loveridge Aff.]; Dkt. No. 30, Part 25 [Ex. P to Loveridge Aff.].)

and in having his medical records transferred to the New York State Department of Corrections),

and (2) even if he has established such a protected liberty interest, he has failed to establish that

he was deprived of that protected liberty interest.  (Dkt. No. 30, Part 26 at 3-7 [Defs.' Mem. of

Law].)

Plaintiff does not respond to this legal argument, having submitted only a response to

Defendants' Rule 7.1 Statement.  (Dkt. No. 35 [Plf.'s Rule 7.1 Response].)  In their reply to

Plaintiff's response, Defendants argue that the Court "must" reject Plaintiff's response because

(1) it was filed late (having been due on March 25, 2005, but not having been filed until April 7,

2005), (2) it was incomplete in that it lacked a memorandum of law and proof of service, which

are required under Local Rule 7.1(a), and (3) Plaintiff's Rule 7.1 Response fails to comply with

Local Rule 7.1(a)(3) in that each of Plaintiff's "denials" fail to "set forth a specific citation to the

record."  (Dkt. No. 37 [Defs.' Reply].)

I reject Defendants' argument that the Court should reject Plaintiff's response papers as

untimely and incomplete, under Local Rule 7.1(b)(3).  (Dkt. No. 37 [Defs.' Reply].)  Instead, I

exercise my discretion under Rule 7.1(b)(3) to consider those response papers.[39]  I note that

N.D.N.Y. L.R. 7.1(b)(3)'s command that the Court "shall not consider" incomplete or untimely

response papers applies only if those papers are "not in compliance with this Rule" and are not

excused by a showing of "good cause."  I find that neither of these conditions has been met in

---

[39]      *See Kilmer v. Flocar, Inc.*, 212 F.R.D. 66, 70-71 (N.D.N.Y. 2002) (referring to the
decision as to whether to deem the failure to respond to a motion for summary judgment as
"consent" to that motion under L.R. 7.1[b][3] as "discretion[ary]" not mandatory; and
considering arguments in attorney's *untimely* affidavit, which was the *sole* document submitted
by plaintiff in response to defendant's motion for summary judgment).

this circumstance–i.e., Plaintiff's Rule 7.1 Response has *substantially* complied with Rule 7.1(a), and, even if it has not, the deficiency of Plaintiff's Rule 7.1 Response is excused due to his status as a *pro se* civil rights inmate, which under the circumstance constitutes "good cause."

Moreover, I reject Defendants' argument that the Court should completely reject Plaintiff's Rule 7.1 Response as failing to "set forth a specific citation to the record." To the extent Defendants argue that Plaintiff's Rule 7.1 Response is "incomplete" for purposes of Local Rule 7.1(b)(3), I find that (again) the response substantially complies with that rule and, in any event, is excused by good cause.[40] To the extent Defendants advance any other argument, I note that Local Rule 7.1(a)(3) provides that the remedy for failing to substantiate a denial of a material fact with a citation to the record is to deem that fact "admitted." N.D.N.Y. L.R. 7.1(a)(3). This remedy implies that the Rule 7.1 Response will be considered. Indeed, Plaintiff's denials in his Rule 7.1 Response may theoretically be substantiated by relevant evidence in the record--if the Court chooses to exercise its "discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion." *See Monahan v. N.Y. City Dep't of Corrections*, 214 F.3d 275, 291 (2d Cir. 2000).[41]

However, Defendants are correct to the extent they argue that, by failing to file a memorandum of law, Plaintiff should be deemed to have "consented" to Defendants' legal arguments. *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31

---

[40]     *See*, *e.g.*, *Kilmer*, 212 F.R.D. at 70-71 (considering attorney's affidavit, the sole document submitted in response to defendant's motion for summary judgment).

[41]     However, again, I note that Plaintiff's so-called "Verified Complaint" may not constitute such evidence as an "affidavit" since it is neither notarized or subscribed to pursuant to 28 U.S.C. § 1746.

(N.D.N.Y. 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendant in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendant with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]).[42]  Of course, the effect of this conclusion is tempered by the fact that, because Plaintiff may have theoretically consented to a meritless argument, the Court must still review the *merits* of Defendants' arguments (i.e., to assure itself that Defendants are entitled to a judgment as a matter of law).[43]

As to the merits of Defendants' argument, Defendants are correct.  "To [establish] a due

---

[42]     *See* N.D.N.Y. L. R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *see also* N.D.N.Y. L.R. 7.1(a) (requiring all oppositions to motions to have a memorandum of law); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.  *If the adverse party does not so respond*, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added).

[43]     Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only if the the facts as to which there is no genuine dispute show that "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  That is why the Rule later provides that "[i]f the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party."  Fed. R. Civ. P. 56(e) (emphasis added).  In other words, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Therefore, the Court must *always* review the merits of a motion for summary judgment.  *Kilmer v. Flocar, Inc.*, 212 F.R.D. 66, 70 (N.D.N.Y. 2002); *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001); *see also* N.D.N.Y. L. R. 7.1(b)(3) (requiring that "the moving party has met its burden to demonstrate entitlement to the relief requested" before the Court may deem "the non-moving party's failure to file or serve any papers as this Rule requires" to be "consent to the granting or denial of the motion").

process claim, a plaintiff must show that he held a protected liberty interest." *Hutchinson v.*

*Pangburn*, 95-CV-5449, 1998 U.S. Dist. LEXIS 4082, at *14 (S.D.N.Y. April 1, 1998). An

inmate has no protected liberty interest with regard to intra-prison transfers, absent the existence

of some state law granting him such an interest. *See Hutchinson*, 1998 U.S. Dist. LEXIS 4082, at

*14 (granting summary judgment to defendants because plaintiff had no protected liberty interest

in being housed in new block of jail, which had fewer violent offenders, rather than being housed

in old block of jail, which had more violent offenders). In our case, this means that "Plaintiff

may [establish] a Due Process Claim for his transfer into a different cell only if he [shows] some

state law right of non-violent offenders to be housed differently from violent offenders." *Burns*

*v. County of Rensselaer*, 02-CV-0165, *Decision and Order* at 6 (N.D.N.Y. March 19, 2003)

(McAvoy, J.) (stating standard on motion to dismiss under Fed. R. Civ. P. 12[b][6]) (citations

omitted). However, despite having had the benefit of discovery, Plaintiff has not established the

existence of such a state law (or prison regulation). (*See*, *e.g.*, Dkt. No. 35, ¶ 23 [Plf.'s Rule 7.1

Response, not citing any New York State law that was violated].)

 Moreover, even if Plaintiff has established a protected liberty interest, he has failed to

establish that he was *deprived* of that protected liberty interest. In short, no evidence exists

suggesting that Plaintiff was in fact transferred from a "non-violent offender" housing unit to a

"violent adult" housing unit (as he alleges). (*See*, *supra*, Statement of Fact Nos. 2, 4.)

 As a result, I recommend that the Court dismiss Plaintiffs' due process claim under the

Fourteenth Amendment.

**B.     Whether Plaintiff Has Established a Conditions-of-Confinement Claim Under the Eighth Amendment**

In their memorandum of law, Defendants argue that Plaintiff has failed to establish a conditions-of-confinement claim under the Eighth Amendment.  (Dkt. No. 30, Part 26 at 8-14 [Defs.' Mem. of Law].)  Again, Plaintiff does not respond to this legal argument, and should therefore be deemed to have consented to it.  (Dkt. No. 35 [Plf.'s Rule 7.1 Response].)  *See also* N.D.N.Y. L.R. 7.1(a)(1),(b)(3).

As to the merits of Defendants' argument, Plaintiff's allegations of inadequate conditions of confinement are appropriately analyzed under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments."  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 346-347 (1981).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official must have a 'sufficiently culpable state of mind.'"  *Farmer*, 511 U.S. at 834.

With regard to the first element, "the plaintiff must demonstrate that the conditions of his confinement resulted in 'unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measures of life's necessities.'"  *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005) (citing *Rhodes*, 452 U.S. at 347).  "As recognized by the Supreme Court in *Rhodes*, 'the Constitution does not mandate comfortable prisons,' . . . and conditions that are 'restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society.'"  *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes*, 452 U.S. at 347, 349).

19

With regard to the second element, "[i]n prison-conditions cases [the requisite] state of mind is one of deliberate indifference to inmate health or safety . . . ." *Farmer*, 511 U.S. at 834. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id*. at 835. In other words, "this standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability." *Blyden*, 186 F.3d at 263 [citing *Farmer*, 511 U.S. at 841]).

Here, Plaintiff has failed to establish both of these elements. First, the deprivation in question was not "sufficiently serious." The conditions of Plaintiff's confinement in the West 2 Unit did not cause Plaintiff "unquestioned and serious deprivations of basic human needs" or deprive him of "the minimal civilized measures of life's necessities" under *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Rather, the evidence is clear that Plaintiff belonged in the West 2 Unit; and there is no evidence that the conditions of his confinement there were even particularly harsh. (*See*, *supra*, Statement of Fact Nos. 2-9.) Indeed, the *cause* of Plaintiff's injuries while in the West 2 Unit appears to have been, at least in some part, his own conduct. (*See*, *supra*, Statement of Fact Nos. 9, 10.)

Morever, even if Plaintiff did experience a "sufficiently serious" deprivation, the evidence does not suggest that Defendants possessed a "sufficiently culpable state of mind" with regard to that deprivation. Rather, Defendants' actions were taken in good faith and in accordance with both New York State Correctional Law and the regular practice of Rensselaer County C.F. (*See*, *supra*, Statement of Fact Nos. 2-9.) Any assertions by Plaintiff to the contrary are either entirely conclusory or are not based on personal knowledge.

As a result, I recommend that the Court dismiss Plaintiffs' prison-conditions claim under the Eighth Amendment.

### C.    Whether Plaintiff Has Established a Denial-of-Medical-Care Claim Under the Eighth Amendment

In their memorandum of law, Defendants argue that Plaintiff has failed to establish a denial-of-medical-care claim under the Eighth Amendment.  (Dkt. No. 30, Part 26 at 8-14 [Defs.' Mem. of Law].)  Again, Plaintiff does not respond to this legal argument, and should therefore be deemed to have consented to it.  (Dkt. No. 35 [Plf.'s Rule 7.1 Response].)  *See also* N.D.N.Y. L.R. 7.1(a)(1),(b)(3).

As to the merits of Defendants' argument, "[t]o establish an unconstitutional denial of medical care [under the Eighth Amendment], a plaintiff must prove a deliberate indifference to serious medical needs."  *Evering v. Lt. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *29 (S.D.N.Y. Sept. 25, 2001) (citing *Estelle v. Gamble*, 429 U.S. 97 [1976] and *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]).  As with the other claim under the Eighth Amendment discussed above, this claim's first prong (serious medical need) is objective while the claim's second prong (deliberate indifference) is subjective.  *Evering*, 2001 U.S. Dist. LEXIS 15549 at *29 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 [2d Cir. 1994]).

With regard to the first prong, this Court has stated:

> While there is no exact definition of a 'serious medical condition' in this circuit, the Second Circuit has indicated some of the factors to be considered when determining if a serious medical condition exists, including '[t]he existence of any injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and
substantial pain.'

*Crosswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at \*6 (N.D.N.Y. March 11, 2003) (citing

*Chance*, 143 F.3d at 702-703); *see also Evering*, 2001 U.S. Dist. LEXIS at \*29 ("To be

sufficiently serious the deprivation must contemplate 'a condition of urgency, one that may

produce death, degeneration or extreme pain.'") (quoting *Hathaway*, 27 F.3d at 66 [citation

omitted]).

      With regard to the second prong, a plaintiff must show that the charged official acted with

"a sufficiently culpable state of mind." *Evering*, 2001 U.S. Dist. LEXIS 15549 at \*30 (citing

*Wilson v. Seiter*, 501 U.S. 294, 298 [1991]); *Hathaway*, 37 F.3d at 66 (citation omitted). "'The

required state of mind, equivalent to criminal recklessness, is that the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists; and he

must also draw the inference.'" *Evering*, 2001 U.S. Dist. LEXIS 15549 at \*30 (quoting

*Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]); *see also Chance*, 143 F.3d at 702

(citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

      In short, to satisfy this second prong, "[t]he conduct alleged must be 'repugnant to the

conscience of mankind.'" *Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting

*Estelle*, 429 U.S. at 104). "It is well-established that mere disagreement over the proper

treatment does not create a constitutional claim. So long as the treatment given is adequate, the

fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

violation." *Chance*, 143 F.2d at 703 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 [2d Cir.

22

1986]); *see also Evering*, 2001 U.S. Dist. LEXIS 15549 at *33-34 (citations omitted); *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992) (citations omitted).  "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703 (citing *Estelle*, 429 U.S. at 105-06).

Here, I will assume for the sake of argument that Plaintiff has established the first prong of the above test: I recognize that, while a broken nose alone may not be a sufficiently serious injury under the Eighth Amendment, a profusely bloody broken nose that requires medical attention may be a sufficiently serious injury under the Eighth Amendment.  *See, e.g., Lasher v. City of Schenectady*, 02-CV-1395, 2004 WL 1732006, at *5 (N.D.N.Y. Aug. 3, 2004) (McAvoy, J.) (a broken nose alone may not be sufficient to constitute a serious medical need, but when a broken nose is bleeding profusely the condition is sufficiently serious); *Farrow v. Dalman*, No. 97-3598, 1998 WL 879553, at *1 (7th Cir. Dec. 7, 1998) (plaintiff's broken nose was sufficiently serious because it caused breathing difficulties and substantial pain).[44]

However, even if Plaintiff has established the first prong of the above test, he has failed to establish the second prong of that test.  No evidence exists suggesting that Defendants acted with *criminal recklessness* with regard to Plaintiff's injury.  (*See, supra*, Statement of Fact Nos. 11-14.)  The closest that Plaintiff comes to showing any indifference toward him by the medical staff at Rensselaer County C.F. is through his deposition testimony, in which he asserts that, on

---

[44]     *Cf. Gibson v. Borough of West Chester,* 02-CV-9089, 2004 WL 203175, at *7 (E.D. Pa. Jan. 12, 2004) (although plaintiff was diagnosed with a broken nose, the injury was not "serious" because he was not in such distress to require emergency medical care at the hospital); *Kaup v. DeTella,* 98-CV-4814, 1999 WL 286288, at *4 (N.D. Ill. Apr. 27, 1999) (plaintiff failed to establish a serious medical need because he alleged only a broken nose and chipped teeth).

or about February 20, 2001, the head nurse at Rensselaer County C.F. substituted a large dose of

ibuprofen for Plaintiff's prescribed pain reliever (apparently Lortab), explaining, "You're not

getting this one" or "No way you're getting this one" or "You can forget about this one."  (Dkt.

No. 30, Part 8 at 78, 82 [Plf.'s Deposition Transcript].)  Without more, the nurse's substitution of

pain relievers, coupled with this remark, simply does not indicate a showing of criminal

recklessness on the part of Defendants.  As the Second Circuit has explained:

> It must be remembered that the State is not constitutionally obligated,
> much as it might be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  The [Bedford
> Hills] correctional facility is not a health spa, but a prison in which
> convicted felons are incarcerated.  Common experience indicates that
> the great majority of [Bedford Hills] prisoners would not in freedom or
> on parole enjoy the excellence in [medical] care which the plaintiffs
> understandably seek on their behalf.  We are governed by the principle
> that the objective is not to impose upon a state prison a model system
> of [medical] care beyond average needs but to provide the minimum
> level of [medical] care required by the Constitution.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d. Cir. 1986) (internal quotations and citation omitted).

As a result, I recommend that the Court dismiss Plaintiffs' inadequate-medical-care claim

under the Eighth Amendment.

### D.   Whether, in the Alternative, Plaintiff Has Failed to Establish the Existence of a Municipal "Policy or Custom" Sufficient to Hold the Defendant County of Rensselaer Liable

In their memorandum of law, Defendants argue that Plaintiff has failed to establish the

existence of a municipal "policy or custom" sufficient to hold the Defendant County of

Rensselaer liable.  (Dkt. No. 30, Part 26 at 15-16 [Defs.' Mem. of Law].)  Again, Plaintiff does

not respond to this legal argument, and should therefore be deemed to have consented to it.  (Dkt. No. 35 [Plf.'s Rule 7.1 Response].)  *See also* N.D.N.Y. L.R. 7.1(a)(1),(b)(3).

As to the merits of Defendants' argument, a municipality (such as a county) may not be held liable by respondeat superior for the actions of its officials.  *Burns v. County of Rensselaer*, 02-CV-0165, *Decision and Order* at 9 (N.D.N.Y. March 19, 2003) (McAvoy, D.J.) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-694 [1978]).  "A plaintiff must first prove the existence of a municipal policy or custom that caused his injuries, and must establish a causal connection between the policy and the alleged civil rights violations before a county may be held liable."  *Burns v. County of Rensselaer*, 02-CV-0165, *Decision and Order* at 9 (N.D.N.Y. March 19, 2003) (McAvoy, D.J.) (internal quotations and citations omitted).

Here, despite the benefit of discovery, Plaintiff has not shown that Defendant County of Rensselaer had a written or unwritten policy of punishing non-violent offenders by transferring them to cells occupied by known violent inmates, or by denying inmates adequate medical care.  (*See*, *e.g.*, Dkt. No. 35 [Plf.'s Rule 7.1 Response, not citing any evidence of such a policy].)  Nor has Plaintiff established that Defendant County of Rensselaer acquiesced in a longstanding practice or custom that constituted a "standard operating procedure" of the Rensselaer County C.F.  (*Id*.)  Indeed, when viewed as a whole, the record contradicts the existence of such a policy.

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendant County of Rensselaer.

**E.      Whether, in the Alternative, the Individual Defendants Are Protected from Liability by the Doctrine of Qualified Immunity**

In their memorandum of law, Defendants argue that, to the extent Plaintiff has

sufficiently identified government officials in his Complaint, those government officials are

protected by the doctrine of qualified immunity.  (Dkt. No. 30, Part 26 at 19 [Defs.' Mem. of

Law].)  Again, Plaintiff does not respond to this legal argument, and should therefore be deemed

to have consented to it.  (Dkt. No. 35 [Plf.'s Rule 7.1 Response].)  *See also* N.D.N.Y. L.R.

7.1(a)(1),(b)(3).

As to the merits of Defendants' argument, "Once qualified immunity is pleaded,

plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed,

violated 'clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (quoting *Harlow v. Fitzgerald*, 457 U.S.

800, 815 [1982]).  Regarding the issue of whether a particular right was *clearly established*,

courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable
> specificity'; (2) whether the decisional law of the Supreme Court and
> the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or her acts were
> unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S.

962 (1992).[45]  Regarding the issue of whether *a reasonable person would have known* he was

---

[45]      *See also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d
Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

violating such a clearly established right, this "objective reasonableness"[46] test is met if "officers

of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 764

(S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).  As

the Supreme Court explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
>
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.  Furthermore, courts in the Second Circuit recognize that "the use of an

'objective reasonableness' standard permits qualified immunity claims to be decided as a matter

of law."  *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992]

[citing Supreme Court cases]).

Here, even if Plaintiff had the "rights" which he claims he had (e.g., the right not to be

transferred to the West 2 Unit without a hearing, the right not to be housed with James Spears,

the right not to have a large dose of ibuprofen substituted for his prescribed pain reliever, etc.),

those rights were (and are) not "clearly established."  At the very least, officers of "reasonable

---

[46]       *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457
U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

competence" could disagree on the legality of the individual Defendants' actions.[47]

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against the individual Defendants on the ground of qualified immunity.

**F.    Whether, in the Alternative, Plaintiff's Claims Against the "Doe" Defendants Should Be Dismissed**

In their memorandum of law, Defendants raise the issue of whether Plaintiff has sufficiently identified the "Doe" Defendants in his Complaint.  (Dkt. No. 30, Part 26 at 19 [Defs.' Mem. of Law].)  Defendants correctly raise this issue.  Plaintiff was specifically and repeatedly: (1) ordered to identify the two "Doe" Defendants in his Complaint; (2) warned of the consequences of his failure to do so (i.e., dismissal); and (3) granted an opportunity to do so (i.e., by amendment of his Complaint).[48]  However, Plaintiff failed to do so.[49]

The specific authority of the Court to dismiss Plaintiff's claims against the two "Doe" Defendants under the circumstances rests on several rules.  One such rule is Fed. R. Civ. P. 16(f), which provides that "[i]f a party . . . fails to obey a . . . pretrial order . . . , the judge, upon motion

---

[47]    *See Estate of Ford v. Ramirez-Palmer,* 301 F.3d 1043, 1053 (9th Cir. 2002) (defendants were entitled to qualified immunity because it would not have been clear to any reasonable correctional officer that double-celling Plaintiff, with assailant, posed an unconstitutional, substantial risk of serious harm).

[48]     (Dkt. No. 6 at 10-11 [Order filed 3/19/03]; Dkt. No. 22 [Order filed 11/01/04], and Minute Entry dated 7/27/04.)

[49]     (*Compare* Dkt. No. 23 [Plf.'s Motion to Amend, filed on 11/4/04] *with* Dkt. No. 41 [Order, filed on 5/17/05, denying Plf.'s Motion to Amend with and without prejudice, but granting Plf. opportunity to file Second Motion to Amend on denial-of-medical-care claim]; *compare* Dkt. No. 45 [Plf.'s Second Motion to Amend, filed on 6/8/05] *with* Dkt. No. 53  [Order, filed on 7/20/05, denying Plf.'s Second Motion to Amend with prejudice].)

or the judge's own initiative, may make such orders with regard thereto as are just . . . [including] any of the orders provided in Rule 37(b)(2) . . . (C) [permitting dismissal of action or any part thereof]."  Here, Plaintiff has failed to comply with the Court's Order of March 19, 2003, which stated that "plaintiff must identify the 'John Does' listed as Defendants in this action prior to the statute of limitations expiring, and as soon as is practicable."  (Dkt. No. 6 at 10.)  Plaintiff's failure to identify the "Doe" Defendants is discussed in the Court's Orders of May 17, 2005, and July 20, 2005.  (Dkt. Nos. 41, 53.)

The consequences of Plaintiff's failure to identify the two "Doe" Defendants should not be ignored simply because the Order denying Plaintiff's Second Motion to Amend (which concerns the identification of the "Doe" Defendants with regard to Plaintiff's denial-of-medical-care claim) is currently on appeal.[50]  "Generally, the filing of a notice of appeal terminates the jurisdiction of the district court except as to those matters in which jurisdiction is reserved by statute or rules."  *Raitport v. GE*, 74-CV-2123, 1974 U.S. Dist. LEXIS 11743, at *2 (S.D.N.Y. Dec. 5, 1974) (citations omitted).  "However, where the deficiency in a notice of appeal, by reason of reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction."  *Raitport*, 1974 U.S. Dist. LEXIS 11743 at *2 (internal quotations and citations omitted).  "An order denying a motion to amend a pleading . . . is not appealable as a 'final decision' under 28 U.S.C. § 1291 (1982). . . .  Moreover, the 'collateral order' exception to the final judgment rule does not apply under these circumstances."  *SEC v. Am. Bd. of Trade*, 830

---

[50]        (Dkt. No. 59 [Plf.'s Notice of Appeal, filed on 8/23/05].)

F.2d 431, 443 (2d Cir. 1987) (citations omitted).

As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims

against the "Doe" Defendants.

> **G.      Whether Plaintiff Has Established a Pendent State Law Claim of Negligence
> with Respect to Plaintiff's Transfer to the West 2 Unit**

In their memorandum of law, Defendants argue that Plaintiff has failed to establish a

pendent New York State common-law claim of negligence with respect to Plaintiff's transfer to

the West 2 Unit because, while Defendants owed Plaintiff a duty of care, no evidence exists

suggesting that (1) they breached that duty or (2) if there was a breach, that the breach caused

Plaintiff any injury.  (Dkt. No. 30, Part 26 at 17-18 [Defs.' Mem. of Law].)  Again, Plaintiff does

not respond to this legal argument, and should therefore be deemed to have consented to it.  (Dkt.

No. 35 [Plf.'s Rule 7.1 Response].)  *See also* N.D.N.Y. L.R. 7.1(a)(1),(b)(3).

As to the merits of Defendants' argument, Defendants correctly cite and apply the New

York State common-law of negligence.  (Dkt. No. 30, Part 26 at 17-18 [Defs.' Mem. of Law].)

There is no evidence suggesting that Defendants breached their duty of care to Plaintiff with

regard to his transfer to the West 2 Unit.  Rather, they correctly followed proper prison

procedure.  (*See*, *supra*, Statement of Fact Nos. 2-8.)  Furthermore, even if Defendants did breach

their duty of care to Plaintiff, there is no evidence suggesting that such a breach caused Plaintiff's

injuries.  Rather, Plaintiff's injuries appear to have resulted from his own conduct.  (*See*, *supra*,

Statement of Fact Nos. 9, 10.)  An alternative ground for dismissing this negligence claim would

exist if the other claims in the Complaint were dismissed, since this negligence claims is merely

a pendent claim.

As a result, I recommend that the Court dismiss Plaintiff's pendent state law claim of negligence.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be **<u>GRANTED</u>**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 12, 2005
        Syracuse, New York

George H. Lowe
United States Magistrate Judge

31